United States District Court
District of Massachusetts

```
_____
                               )
VAN WAGNER COMMUNICATIONS, LLC,)
VAN WAGNER BOSTON, LLC,        )
        Plaintiffs,            )
                               )   Civil Case No.
        v.                     )   13-11028-NMG
                               )
MASSACHUSETTS DEPARTMENT OF    )
TRANSPORTATION, MASSACHUSETTS  )
OFFICE OF OUTDOOR ADVERTISING, )
RICHARD A. DAVEY, EDWARD J.    )
FARLEY,                        )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs bring this action challenging the enforceability of 700 C.M.R. § 3.07 et seq., which are regulations of outdoor advertising recently promulgated by defendant Massachusetts Department of Transportation ("MassDOT").

## I. Background

Plaintiffs Van Wagner Communications, LLC ("VWC") and Van Wagner Boston, LLC ("VWB") are New York entities. VWC is the fourth largest national outdoor advertising company in the United States. VWB is a wholly owned subsidiary of VWC. Together they hold more than 80 permits from defendant Massachusetts Office of Outdoor Advertising ("OOA"), which is a subdivision of the

Highway Division of MassDOT. The Complaint also names as defendants Richard Davey, Secretary of Transportation and Edward Farley, Director of the OOA in their official capacities.

**A. History of the OOA**

In 1946 the Massachusetts legislature amended M.G.L. c. 93 to vest exclusive authority to regulate outdoor advertising in the Outdoor Advertising Authority ("OAA"). The OAA was controlled by a three-member board, appointed by the governor. In 1955 the OAA was renamed the Outdoor Advertising Board ("OAB").

In 1965 Congress enacted the Federal Highway Beautification Act ("FHBA"). In 1971 Massachusetts, in turn, enacted M.G.L. c. 93D to ensure compliance with the FHBA. The Commonwealth later entered into an agreement with the federal government to implement the FHBA ("Federal/State Agreement"). The text of that agreement indicates that it applies to

> all zoned and unzoned commercial and industrial areas within 600 feet of the nearest edge of the right-of-way of all portions of the Interstate and primary systems within the Commonwealth of Massachusetts in which outdoor advertising, signs, displays and devices may be visible from the main traveled way of said systems.

In 2009 Massachusetts enacted the 2009 Transportation Act, which consolidated the Department of Highways into MassDOT. Drafts of the legislation called for the elimination of the OAB and an express delegation of authority to a new entity to perform the OAB's previous functions, but the statute as enacted did not

create such an entity.

In November, 2009, MassDOT adopted temporary regulations which essentially mirrored those that had been in place under OAB but also created the OOA.  The OOA is administered by a single Director with permit granting authority.  In June, 2012, MassDOT proposed further changes which went into effect in December, 2012 ("New Regulations").

### B. New Regulations

Plaintiffs assert that the New Regulations impose numerous restrictions on off-premise signs that were not explicitly authorized by the Massachusetts legislature.  In particular, plaintiffs contend that the 2009 Transportation Act did not create an entity to succeed OAB and authorized MassDOT to regulate outdoor advertising only to the extent necessary to ensure compliance with the FHBA and the Federal/State Agreement. Plaintiffs claim that the New Regulations do far more than that, including that they regulate outdoor advertising that is not near a highway.

Plaintiffs object specifically to the language of 700 C.M.R. § 3.07(4) which states that:

> No permit shall be granted for a sign which the Director, in its discretion, determines would not be in harmony with or suitable for the surrounding area or would do significant damage to the visual environment. In making this determination, the Director may consider, among other factors, the health, safety and general welfare of the public; the scenic beauty of the area; the physical, environmental, cultural, historical or

>architectural characteristics of the location and the area; the structure, height and size of the sign; the illumination and brightness of the sign; and the number of signs, including on premises and accessory use signs, which are in the area wherein the sign is to be located. The existence of any sign or signs in an area shall not require a finding that the erection of another sign will be in harmony with the area.

Plaintiffs assert that this particular provision of the New Regulations gives the Director "unbridled discretion" over permitting decisions and that such standardless discretion constitutes an unconstitutional prior restraint on their First Amendment right to free speech.

Plaintiffs' Complaint seeks declaratory judgments that: 1) the MassDOT lacks authority to impose the New Regulations (Count I), 2) the New Regulations violate platintiff's First Amendment rights (Count II), 3) by promulgating and enforcing the New Regulations defendants have a) deprived plaintiffs of rights secured by the First and Fourteenth Amendments and § 1983 (Count III) and b) deprived plaintiffs of their right to free speech under Article 16 of the Massachusetts Constitution (Count IV) and 4) defendants violated the Massachusetts Administrative Procedures Act when they adopted substantive changes to the proposed regulations without holding a public hearing (Count V).

The Court heard oral argument on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss on June 13, 2013, after which the Court ordered additional briefing and took both motions under advisement.

## II. Motion to Dismiss

### A. Count II

Count II of the Complaint is entitled "Declaratory Judgment-First Amendment". Defendants assert that this count should be dismissed because the Declaratory Judgment Act is not an independent basis for jurisdiction and plaintiffs' Complaint provides no other statutory grounds for jurisdiction over that Count. This Court agrees that the Declaratory Judgment Act "is not a grant of jurisdiction.". Watchtower Bible & Tract Soc. of N.Y., Inc. v. Colombiana, 712 F.3d 6, 11 (1st Cir. 2013). In fact, plaintiffs acknowledge that dismissing Count II would make little difference to their case given that they have also brought a First Amendment claim under § 1983 in Count III. As a result, Count II will be dismissed.

### B. Count III

Defendants assert that plaintiffs lack standing to raise their First Amendment challenge in Count III because plaintiffs have not identified any injury they have suffered as a result of the New Regulations.

In order to establish Article III standing a plaintiff must show 1) an injury in fact, 2) a causal connection between the injury and the conduct complained of and 3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Plaintiffs claim that the Director determined that nine of their permit applications were incomplete for failure to comply with a requirement of the New Regulations that applicants notify all property owners located within 500 feet of a proposed outdoor sign.  Plaintiffs assert that the denial of their permit applications for failure to comply with that requirement constitutes an injury in fact and is evidence that the Director is using the New Regulations to "stall the process".

Although plaintiffs complain that the notice requirement is "onerous", such an assertion is not sufficient to establish standing. Plaintiffs do not cite the specific regulation in which the notice requirement appears but it is clear that no such provision is included within the language of § 3.07(4), the provision which constitutes the basis for plaintiffs' prior restraint claim.  As a result, this Court agrees with defendants that plaintiffs' mere assertion that they have been harmed by the notice requirement does not confer upon plaintiffs standing to challenge § 3.07(4) or any other provision of the New Regulations unrelated to the notice requirement.

Plaintiffs have not identified any specific injury they have suffered as a result of § 3.07(4).  Instead, they rely on City of Lakewood v. Plain Dealer Publishing Company, 486 U.S. 750 (1988). In that case a newspaper challenged a municipal ordinance governing the provision of permits for the placement of newspaper

racks on city property.  In concluding that a facial challenge to the ordinance was permissible, the Court stated that when

> a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.

Id. at 755-56.  Relying on that language, plaintiffs assert that the fact that they have not been denied permits under § 3.07(4) is immaterial and they are entitled to bring a facial challenge merely by being subject to the New Regulations.  Taking plaintiffs' argument to its logical conclusion would, however, allow any plaintiff to bring a facial challenge without first satisfying the additional standards that the Court propounded in City of Lakewood.  Here, plaintiffs have failed to meet those requirements.

As an initial matter, the City of Lakewood decision, unlike this case, did not involve commercial speech.  Here plaintiffs request that the Court apply the prior restraint doctrine to commercial speech, despite the fact that the Supreme Court has expressly called such an application into question. See e.g. Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 571, 100 S. Ct. 2343, 2354, 65 L. Ed. 2d 341 (1980)("[C]ommercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it.")

Even if the prior restraint doctrine is applicable to the

realm of commercial speech, a facial challenge is not appropriate in this case because City of Lakewood is distinguishable.  The holding in City of Lakewood was conditioned upon unique First Amendment concerns arising from the fact that plaintiff in that case was a newspaper and the Court found the presence of the "twin threats of self-censorship and undetectable censorship". 486 U.S. at 760.  Neither is present in this case.

With respect to the first "threat", in City of Lakewood the Court determined that the ordinance gave a government official "substantial power to discriminate" based on the content or viewpoint of speech "by suppressing disfavored speech or disliked speakers." Id. at 759.  Here, there is no evidence that the Director is likely to discriminate based on content or viewpoint. In fact, the permitting application scheme under the New Regulations requires that permits be submitted without any reference to the content of the proposed signs.  Furthermore, the content displayed on many of the signs changes frequently following the approval of a permit and such changes in content do not require the approval of the Director. Id. at 760 (laws that "do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken carry little danger of censorship.").

Consequently, plaintiffs' only argument in support of an alleged risk of content-based discrimination is the vague

suggestion that a member of the public might complain about the content of a particular advertisement.  Such a complaint, might, in turn, cause the Director privately to decline to renew the permit based on its content while publicly justifying the denial based on the factors laid out in § 3.07(4).  Plaintiffs' argument is speculative and does not rise to the level of a "real and substantial threat" of "identified censorship risks" required by City of Lakewood. Id. 759.

Plaintiffs' Complaint also provides no evidence of the risk of "self-censorship by speakers in order to avoid being denied a license to speak". Id.  This case is distinguishable from City of Lakewood in which there was a genuine concern that a newspaper might feel "significant pressure" to endorse or refrain from criticizing a political candidate for fear it might affect the disposition on its permit application. Id. at 756.  Here there is no suggestion that plaintiffs have or are likely to change their behavior in any way as a result of § 3.07(4).  In fact, here it is apparent that plaintiffs have not been engaging in self-censorship since being subject to § 3.07(4) of the New Regulations.  They have submitted numerous permit applications under the new regime during which the only regulatory difference in § 3.07(4) has been the Director's discretion to consider "the illumination and brightness of the sign."  That language is not at issue in this case.

As a result, this case is not appropriate for a facial challenge because neither of the factors the Court relied upon in City of Lakewood is present here.  Instead, the Court finds that § 3.07(4) of New Regulations constitutes "too blunt a censorship instrument to warrant judicial intervention prior to an allegation of actual misuse" Id. at 761.  Plaintiffs have failed to make the prerequisite showing of standing and Count III will therefore be dismissed.

**C. Counts I, IV and V**

Counts I, IV and V are before this Court on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  When, as here, the Court dismisses the foundational federal claims, "it must reassess its jurisdiction" over any remaining pendant state law claims.  Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  Factors for the Court to weigh in determining whether to retain jurisdiction include the interests of fairness, judicial economy, convenience and comity. Id.  Because comity is a "particularly important" concern

> the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.

Id.

In this case the factors weigh strongly against retaining jurisdiction over the state law claims.  The case is still in the earliest stages and the parties will not be unduly prejudiced by

-10-

a remand of the state law claims. Furthermore, the remaining state law claims asserting that defendants lacked statutory authority to enforce the regulations at issue "raise substantial questions of state law that are best resolved in state court." Id. As a result, the Court will decline jurisdiction over Counts I, IV or V and those counts will be dismissed.

## ORDER

Plaintiffs have requested that this Court enter a preliminary injunction to stay the Massachusetts permitting regime, to maintain the status quo with respect to outstanding OOA permits and to forbid the issuance of any such new permits. Because this Court has determined to dismiss plaintiffs' claims arising under federal law and to decline supplemental jurisdiction over the remaining state law claims for lack of subject matter jurisdiction:

1) Plaintiff's Motion for a Temporary Injunction (Docket No. 2) is **DENIED**, and

2) Defendants' Motion to Dismiss (Docket No. 28) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 10, 2013