United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| OA VW LLC and <br> OUTFRONT MEDIA BOSTON LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MASSACHUSETTS DEPARTMENT OF TRANSPORTATION, MASSACHUSETTS OFFICE OF OUTDOOR ADVERTISING, RICHARD A. DAVEY and EDWARD J. FARLEY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. <br> 13-11028-NMG |

## MEMORANDUM AND ORDER

**GORTON, J.**

Plaintiffs OA VW LLC and Outfront Media Boston LLC (collectively "Outfront") bring this action challenging the enforceability of 700 C.M.R § 3.07 et seq., which are regulations of outdoor advertising promulgated in 2012 by defendant Massachusetts Department of Transportation ("MassDOT").[1] Their complaint also names as defendants the Massachusetts Office of Outdoor Advertising ("OOA"), which is a subdivision of the Highway Division of MassDOT, Richard Davey,

---

[1] The original plaintiffs in this action, Van Wagner Communications, LLC and Van Wagner Boston, LLC were recently acquired and are now indirect wholly-owned subsidiaries of Outfront Media Inc., a publicly-traded company. After the acquisition was completed, plaintiffs changed their names to OA VW LLC and Outfront Media Boston LLC, respectively.

-1-

the Secretary of Transportation and Edward Farley, the Director of the OOA in their official capacities.

**III. Background**

    **A.    History of the Massachusetts Office of Outdoor Advertising**

In 1946 the Massachusetts legislature amended M.G.L. c. 93 to vest exclusive authority to regulate outdoor advertising in the Outdoor Advertising Authority ("OAA"). The OAA was controlled by a three-member board, appointed by the governor. In 1955 the OAA was renamed the Outdoor Advertising Board ("OAB").

In 1965 Congress enacted the Federal Highway Beautification Act ("FHBA") which provides for the regulation and control of "outdoor advertising signs, displays, and devices in areas adjacent to" interstate and federal-aid primary highways. 23 U.S.C. § 131(a). Under the FHBA, in order to receive full allotment of federal highway funds, each state must ensure that outdoor advertising near federal highways in the state conform to "size, lighting and spacing" requirements "to be determined by agreement" with the U.S. Department of Transportation.

Massachusetts entered into such an agreement with the federal government in 1971 ("the Federal/State Agreement") following the enactment of M.G.L. c. 93D to ensure compliance

with the FHBA. The text of the Federal/State Agreement indicates that it applies to

> all zoned and unzoned commercial and industrial areas within 600 feet of the nearest edge of the right-of-way of all portions of the Interstate and primary systems within the Commonwealth of Massachusetts in which outdoor advertising, signs, displays and devices may be visible from the main traveled way of said systems.

In 2009 the Massachusetts legislature enacted M.G.L. c. 6C ("the 2009 Transportation Act"), which repealed the statutes that created OAB and consolidated several state agencies into MassDOT. The Act authorizes MassDOT to "exercise any powers necessary for the commonwealth to be in compliance with" its obligation under FHBA. Early drafts of the legislation expressly delegated the OAB's broader authority to a new entity but none of those was enacted. The Commonwealth maintains that OAB was "integrated" into MassDOT while plaintiffs contend that the Act eliminated the OAB without conveying its powers to MassDOT or to any other entity.

In November, 2009, MassDOT adopted temporary regulations which essentially mirrored those that had been in place under OAB but also created defendant Massachusetts Office of Outdoor Advertising ("OOA") to replace the OAB. The OOA is administered by a single Director with permit granting authority. In June, 2012, MassDOT proposed further regulatory changes which went into effect in December, 2012 ("New Regulations").

**B. New Regulations**

Plaintiffs assert that the New Regulations impose numerous restrictions on off-premise signs that were not explicitly authorized by the Massachusetts legislature. In particular, plaintiffs contend that the 2009 Transportation Act did not create an entity to succeed the OAB and authorized MassDOT to regulate outdoor advertising only to the extent necessary to ensure compliance with the FHBA and the Federal/State Agreement. Plaintiffs claim that the New Regulations do far more than that, including that they regulate outdoor advertising everywhere in the Commonwealth rather than just advertising near an Interstate Highway.

Plaintiffs object specifically to the language of 700 C.M.R. § 3.07(4) which states:

> No permit shall be granted for a sign which the Director, in its discretion, determines would not be in harmony with or suitable for the surrounding area or would do significant damage to the visual environment. In making this determination, the Director may consider, among other factors, the health, safety and general welfare of the public; the scenic beauty of the area; the physical, environmental, cultural, historical or architectural characteristics of the location and the area; the structure, height and size of the sign; the illumination and brightness of the sign; and the number of signs, including on premise and accessory use signs, which are in the area wherein the sign is to be located. The existence of any sign or signs in an area shall not require a finding that the erection of another sign will be in harmony with the area.

Plaintiffs further protest that the subject provision of the New Regulations gives the Director "unbridled discretion" over permitting decisions and that such standardless discretion constitutes an unconstitutional prior restraint on their First Amendment right of free speech.

**IV. <u>Procedural history</u>**

In April, 2013, plaintiffs filed a complaint seeking declaratory judgments that 1) MassDOT lacks authority to impose the New Regulations (Count I), 2) the New Regulations violate plaintiffs' First Amendment rights (Count II), 3) by promulgating and enforcing the New Regulations defendants have a) deprived plaintiffs of rights secured by the First and Fourteenth Amendments and § 1983 (Count III) and b) deprived plaintiffs of their right to free speech under Article 16 of the Massachusetts Constitution (Count IV) and 4) defendants violated the Massachusetts Administrative Procedures Act when they adopted substantive changes to the proposed regulations without holding a public hearing (Count V). Plaintiffs also filed a motion for preliminary injunction to enjoin defendants from enforcing the New Regulations. Defendants, in response, moved to dismiss the case.

Oral argument on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss was held in June, 2013. The following month, this Court allowed the defendants'

motion to dismiss after concluding that the plaintiffs lacked standing to raise their First Amendment challenge because they have not identified any injury in fact as a result of 700 C.M.R. § 3.07(4). Plaintiffs appealed the dismissal of Counts I, III, IV and V to the First Circuit Court of Appeals.

In October, 2014, the First Circuit reversed this Court's holding on the standing issue, reinstated the pendant state law claims and remanded the case. It expressed no opinion on the merits of plaintiffs' claims.

In November, 2014, defendants filed a renewed motion to dismiss Counts I, IV and V and to stay Count III. For the reasons that follow, defendants' motion will be denied without prejudice.

**V. Defendants' renewed motion to dismiss**

**A. Counts I, IV and V (the State Law Claims)**

Defendants contend that plaintiffs' state law claims are barred by the Eleventh Amendment under Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984). They argue that the Court lacks subject matter jurisdiction over those claims because the Eleventh Amendment to the United States Constitution bars federal courts from instructing state officials on how to conform their conduct to state law. Id. at 103-106, 121.

Plaintiffs respond that Pennhurst does not apply to claims that state officials are acting in a manner that is ultra vires

their authority. They contend that MassDOT has not been delegated general regulatory power over outdoor advertising and that the only authority that the Massachusetts legislature gave to MassDOT is the power to take steps "necessary" to comply with the "size, lighting and spacing" requirements in the Federal/State Agreement.

Plaintiffs rely on Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949), which ruled that the doctrine of sovereign immunity does not apply to a claim challenging the actions of government officials that exceed the scope of the officials' legal authority:

> [W]here the officer's power are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions....His actions are ultra vires his authority and therefore may be made the object of specific relief.

337 U.S. at 689. The Court emphasized that sovereign immunity is not implicated in such context

> only because of the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient.

Id. at 690.

The Court in Pennhurst rejected a broader version of the ultra vires doctrine advanced by the dissent but nevertheless recognized that the exception applies where a state officer "acts without any authority whatever." Pennhurst, 465 U.S. at 102 n. 11 (quoting Florida Dep't of State v. Treasure Salvors,

Inc., 458 U.S. 670, 697 (1982)). The Eleventh Amendment therefore does not prevent federal courts from enjoining state officials from engaging in acts that the officials have no authority to take. Pennhurst re-affirmed the Larson Court's holding that the ultra vires exception rests on "the officer's lack of delegated power." Id. (quoting Larson, 337 U.S. at 690). The test for determining the applicability of such exception is "whether the [officer's] action, even if legally erroneous, was beyond the scope of his statutory authority." Muirhead v. Mecham, 427 F.3d 14, 20 (1st Cir. 2005).

Contrary to defendants' assertion, the existence of the ultra vires exception has been recognized in cases following Pennhurst. See, e.g., Miami University Associated Student Government v. Shriver, 735 F.2d 201 (6th Cir. 1984) (holding that plaintiffs plausibly contended that the university's regulation of off-campus automobile use was beyond their statutory authority but leaving to the district court the question of whether the regulations were in fact ultra vires); Word of Faith World Outreach Center Church v. Morales, 986 F.2d 962 (5th Cir. 1993) (holding that the Eleventh Amendment did not prevent a federal court from enjoining the state Attorney General from seeking documents from and prosecuting the plaintiff church when the applicable statute authorized such action against some parties but not against the church).

The cases relied upon by the Commonwealth in which the court refused to apply the ultra vires doctrine are distinguishable because they involve claims against state officials who were granted general regulatory power but acted erroneously within the scope of their authority. See, e.g., Bad Frog Brewery, Inc. v. N.Y. State Liquor Author., 1996 WL 705786 (N.D.N.Y. Dec. 5, 1996) (state law gave the regulators general authority to regulate the labels on alcoholic beverages which plaintiff argued was abused); Mississippi Surplus Lines Ass'n v. State of Mississippi, 384 F. Supp. 2d 982, 986 (S.D. Miss. 2005) ("it cannot reasonably be contended [that the state official] lack[ed] authority under state law to take the challenged actions").

Here, the parties dispute the scope of regulatory authority afforded to MassDOT which, in turn, affects this Court's jurisdiction over the plaintiffs state law claim. Defendants contend that the Eleventh Amendment bars this Court's subject matter jurisdiction because MassDOT has a colorable basis of authority under state law. They emphasize that the Massachusetts Constitution permits state regulation of outdoor advertising and that the 2009 Transportation Act never repealed Chapter 93 of the General Laws, which delegated to the OAB broad authority to regulate billboards "within public view of any

highway, public park or reservation." Mass. Const. Amend., Art. 50; M.G.L c. 93, §§ 29-33.

Plaintiffs, on the other hand, assert that MassDOT lacks any state law authority to adopt regulations governing outdoor advertising other than those "necessary" to implement "size, lighting and spacing" requirements prescribed by federal law and therefore the Eleventh Amendment is inapplicable because the challenged regulations are ultra vires.

This Court has authority to determine its own jurisdiction. See United States v. Ruiz, 536 U.S. 622, 628 (2002) ("it is familiar law that a federal court always had jurisdiction to determine its own jurisdiction"). The crucial question is whether the 2009 Transportation Act gave MassDOT broad power to regulate outdoor advertising in Massachusetts or limited such power to that necessary to implement the restrictions imposed by the FHBA. That is a question of state law interpretation.

A federal court may, in its discretion, certify to the Massachusetts Supreme Judicial Court ("the SJC") a question of Massachusetts law that is "determinative of the cause then pending in the certifying court" and as to which "it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]." Mass. S.J.C.R. 1:03; see also In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010). The Court concludes that the dispositive question here satisfies both criteria for

certification and therefore will defer to the judgment of Commonwealth's highest court.

If the SJC holds that MassDOT lacked statutory authority to promulgate the challenged regulations, then the Eleventh Amendment will not preclude an injunction against enforcement of those regulations and plaintiffs' First Amendment claim will become moot. If the SJC determines that MassDOT had the requisite authority, then plaintiffs' state law claim will be dismissed on jurisdictional grounds and this Court will proceed to resolve plaintiffs' First Amendment claim.

Accordingly, defendants' motion to dismiss Counts I, IV and V will be denied without prejudice.

### B. Count III (the Federal Claim)

Defendants contend that the Court should abstain from deciding plaintiffs' First Amendment claim under the Pullman doctrine. Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941).

Pullman abstention is a discretionary doctrine with equitable moorings that are implicated when a federal court is confronted with an allegation that a state law violates federal rights. The doctrine directs federal courts to abstain from deciding an issue, thus avoiding needless friction with state policies and unnecessary constitutional rulings when a state court construction of the law may obviate its need to do so. Pullman abstention is warranted where

> 1) substantial uncertainty exists over the meaning of the state law in question, and 2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question.

Barr v. Galvin, 626 F. 3d 99, 107 (1st Cir. 2010). Defendants argue that the first requirement for abstention is met because no Massachusetts court has interpreted MassDOT's rulemaking authority under the 2009 Transportation Act and this decision is best left to the state courts. They contend that the second prong is also satisfied because resolution of the state law question in plaintiffs' favor would eliminate the need for the Court to reach the First Amendment issue.

The United States Supreme Court has held that where a federal court can certify a potentially dispositive question of state law to the highest court of the state in question, it should do so rather than dismiss or stay a federal claim on abstention grounds. See Arizonans for Official English v. Arizona, 520 U.S. 43, 75-77 (1997); Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 396 (1988).

In light of this Court's decision to certify the question regarding the scope of MassDOT's authority under the 2009 Transportation Act which may be dispositive of the plaintiffs' First Amendment claim, defendants' motion to dismiss Count III will be denied without prejudice.

## ORDER

For the foregoing reasons,

1) the defendants' renewed motion to dismiss (Docket No. 63) is **DENIED WITHOUT PREJUDICE**;

2) the following question of state law is **CERTIFIED** to the Massachusetts Supreme Judicial Court pursuant to Supreme Judicial Court Rule 1:03:

   > Does the 2009 Transportation Act, codified at M.G.L. c. 6C, empower the Massachusetts Department of Transportation to regulate outdoor advertising throughout the Commonwealth or only with respect to the implementation of restrictions imposed by the Federal Highway Beautification Act of 1965, codified at 23 U.S.C. § 131(a)?

   A statement of the facts relevant to the question certified and describing the nature of the controversy in which the question arose is set forth in the attached Memorandum;

3) the Clerk of the Court is directed to forward to the Massachusetts Supreme Judicial Court, under official seal, copies of this Memorandum and Order and the entire record of this case; and

4) pending a response to the certified question from the Massachusetts Supreme Judicial Court, this case is hereby **STAYED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 6, 2015